E. L. ADAMS, SURVIVOR OF BURCKMEYER AND ADAMS, *vs.* DAVID WHITEFORD.—*June* 1851.

Upon a bill for a discovery as to the ownership of a certain draft, upon which suit had been instituted in the name of the defendant against the complainant, the answer disclosed all the facts within the knowledge of defendants, and leaves the consequences of these facts, as far as they affect the ownership of the draft, to the court. HELD: That this answer was sufficient to entitle the defendant to a dissolution of the injunction granted upon the bill.

APPEAL from the equity side of *Baltimore* county court.

This case arises out of a bill filed by the appellee on the 1st of February, 1849, to obtain discovery from *Burckmeyer* and *Adams*, with a view to his defence in an action of law then pending in their names, against him, in *Baltimore* county court, and for an injunction restraining proceedings upon the suit at law, until such discovery be made. The suit at law has been twice before this court, and all the facts of the case will be found in the reports of those appeals in 1 *Gill*, 127, and 6 *Gill*, 1. The injunction was granted as prayed, and upon the coming in of the answer, a motion was made for a dissolution, and from the order of the court refusing to dissolve the injunction, this appeal is taken. The allegations of the bill and answer are fully set out in the following opinion of the court below, delivered by (FRICK, C. J., and LE GRAND, A. J.,) upon their order overruling the motion to dissolve, passed on the 30th of October, 1849.

" The bill states that suit was brought on the law side of this court, against the complainant by the defendants, alleging themselves to be the owners or possessors of the draft in question, upon which the complainant is endorser. The complainant charges that the said plaintiffs at law, are not now, and were not when this suit was brought, the owners or possessors of said draft, but that it was discounted at the *Western Bank of Baltimore*, and was in the possession of the bank when this suit was brought, by the direction of said bank, in the name of *Burckmeyer* and *Adams*. That these facts are a necessary defence to *Whiteford*, and he has used every means *aliunde*, to obtain the proof, and now claims that the defendants here shall discover upon oath, if they ever were the owners of said draft, or ever paid any value for it; whether at the time the suit was brought, they had *possession* of the same, or had returned it to the bank, and whether since the suit they ever had the possession? An injunction is prayed to restrain the trial of the action at law, until their answer in the premises.

The answer of *Adams*, (the surviving partner,) states that they never had any dealings with complainant. That in regard to their being the owners or possessors of the draft in question, it was sent to them for collection from the bank as its property. That it was protested for non-acceptance, and notice sent on to that effect to the bank, but the draft was retained by them until maturity, and being mislaid, was not presented to the drawees when due, for payment. That no notice of protest was therefore sent to any party of *non-payment*, nor did these defendants give any value for the same. That it was after maturity returned to the bank, who again returned it to defendants. That they again sent it enclosed to the bank, by letter of the 7th of October, 1840, a copy of which is filed with the answer ( *See* 1 *Gill*, 133.) That they also wrote the letter of the 5th of November, 1840, to *T. Phenix*, cashier of the bank, a copy of which is filed, ( *See* 6 *Gill*, 9,) and sent the same by due course of mail. That this is the only information in the power of respondent to give by way of discovery, and of his own knowledge he knows nothing of the possession

of the draft at the time of suit, nor whether the facts stated in the answer constituted the legal ownership in them of said draft.

To this answer exceptions are filed: That the answer is evasive, and is no sufficient disclosure to the question, whether they were in possession of the bill at the time that the suit was instituted, or since? And that it does not expressly admit or traverse the allegation of the bill in relation to the possession of the draft, &c. The cause was set down for hearing upon bill and answer, by an order of this court of the 13th of February, for the 20th of February, 1849, and between these two periods the exceptions referred to were filed. After argument and hearing on this state of the case before this court, and while the subject was under advisement of the court, leave was granted, upon petition, to the defendants, to file a supplemental answer. In this answer, *Adams* states that he knows nothing of the matters of fact stated in the bill of complainant, but what appears on the face of the bill of exchange in suit, and what may be further found in the correspondence of defendants, with *T. Phenix*, cashier, which was several years ago sent to *Robert J. Brent* and *O. Hersey*, attorneys in *Baltimore* city, *(See* 1 *Gill*, 132, 133. 6 *Gill*, 2, 3, 7, 8, 9, 10, 11;*)* that in regard to claiming title, they claim no other title or right than is claimed in the above correspondence, nor did they give any authority to sue other than such is there found, although they were aware that such suit had been brought in their names, and they have made no objections thereto. The case is now upon the motion to dissolve, presented *de novo*, to this court for its decision, and upon the prayer of the complainant that the supplemental answer may first be taken off the files of the court, and the order allowing it, to be revoked.

The effect of withdrawing from the files this supplemental answer, is to leave the defendants upon their original answer, which being, as is contended, defective and insufficient, must constitute the injunction perpetual; because it is further insisted by the complainant, that the respondents are bound to abide by their original answer, which admits of no supplement or

amendment, but upon the ground of mistake, or the occurrence of new matter since the answer, suggested upon motion and affidavit to the court; all which it urged is not averred in the case before us. Without stopping to question or deny this doctrine thus laid down upon authorities produced, how would this dispose of the exceptions to the answer which the complainant has himself interposed? He denies the sufficiency of the answer for the purpose he has in view, to discover whether the plaintiffs at law, are the holders or possessors of the draft in question, or have such an interest in it as entitles them to sue upon it. The exceptions assume of course that the complainant requires a more distinct and explicit answer. And the respondants yielding to the force of these objections to the original, upon leave granted by the court, assume in a supplemental answer, to supply the defects and insufficiencies of which the exceptions complain. This is not the case of a defendant coming in to correct a mistake, or to alter the character of his original answer, seeking of his own *motion* or *accord* to make a better case than he had before. But he is invoked to this course, as it were, at the instance of complainant, not to correct the old, but supply new and additional matter; to be more explicit in his statements on the points suggested by the complainant, as being insufficient before. Whether he has done so or not, is the true question before us, conceiving as we do, that the supplemental answer is rightfully in, and that we are called upon to decide upon the whole case as now presented.

To this purpose we have given to these answers a candid and full examination, and cannot satisfy ourselves that they meet the allegations and the object of the bill. The open and avowed object is, to obtain from the plaintiffs discovery whether they have ever had any interest in the suit at law brought in their names against *Whiteford?* The possession of the draft at the time of directing or instituting the suit, would be sufficient *prima facie* evidence to sue upon it. If we construe that answer properly, it negatives the possession in them, particularly if added to the admission that they paid no value for it. Their connection with this draft, they say, is disclosed by the letters

between them and the bank, and thus, whether they have any interest in this draft or in this suit, they refer to the legal construction of their correspondence with *Phenix*. Surely there must exist better ground for standing in the attitude of a plaintiff, than the doubtful, unascertained position which they assume here. Even under all the circumstances, they must have some impression, if not conviction of their own upon the subject, and even this impression of their rights, as plaintiffs, they hesitate to express. In any view of these answers, they have either not fully met the disclosure sought by the complainant, or as far as they have disclosed, have shown no interest or possession in the draft, so far as to constitute them legal plaintiffs in the action at law, and the motion to dissolve is therefore overruled."

The cause was argued before DORSEY, C. J., CHAMBERS, SPENCE and MARTIN, J.

By ROBT. J. BRENT, for the appellants, and
By WALLIS for the appellee.

CHAMBERS, J., delivered the opinion of this court.

The bill of complainant does not deny the obligation of complainant to pay the amount of the note or draft. It is not denied that the money is due either to the appellants or to the *Western Bank*.

It is manifest from the whole case that the suit was instituted by the immediate actual order of the bank in the name of the appellants, and that after the suit was instituted in the name of the appellants, they acquiesced in it.

The appellant, *Adams*, fairly answers all the facts within his knowledge, and properly, in such a case as this, leaves the legal consequences of these facts to the court. What did or did not constitute in law the possession or ownership of the draft has been a subject of earnest litigation for years past, and one which the appellants were not required to decide, and were probably not competent to decide. Without saying whether the injunction was properly issued, we are of opinion that the

answer was sufficient to entitle the appellant to a dissolution. As the matter disclosed in the answer may be used in evidence by the appellee on any future trial at law, we remand the case to the county court.

INJUNCTION DISSOLVED, AND CASE REMANDED.